Argued and submitted September 20, 1983, reversed and remanded April 1, 1984

STATE OF OREGON,
*Appellant,*

*v.*

KEVIN PATRICK McCONNVILLE,
*Respondent.*

(82-60837; CA A27791)

679 P2d 1373

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Deputy Solicitor General, Salem.

Robert C. Homan, Eugene, argued the cause for respondent. On the brief were Robert N. Peters, Assistant Public Defender, and Robert J. Larson, Director, Public Defender Services of Lane County, Inc., Eugene.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Warren, J., specially concurring.

**BUTTLER, P. J.**

The state appeals from a pretrial order suppressing evidence of defendant's performance on six field sobriety tests and the tape-recorded statements made by him prior to his arrest for driving while under the influence of intoxicants. We reverse and remand for further proceedings.

On June 11, 1982, at approximately 1 a.m., a police officer observed a vehicle weaving and crossing over the center line of the highway as it approached and passed him going in the opposite direction. The officer made a U-turn, overtook the vehicle and activated the overhead emergency lights of his police car. Defendant stopped his vehicle and walked back to the police car. Shortly thereafter, the officer observed that defendant had a strong odor of alcoholic beverage on his breath, his face was flushed, his eyes were bloodshot and glassy, and he was slurring some words. At that time, however, he did not conclude that defendant was under the influence of alcohol. Following a preliminary inquiry as to defendant's identity, the officer proceeded to activate a tape recorder and to administer a series of six field sobriety tests. After the testing was concluded, the officer testified that he still was not satisfied that defendant was under the influence. He then made several inquiries of defendant and decided to arrest him on the basis of his driving, objective symptoms, test performances and statements. At that time, he advised defendant of his rights.

At the hearing on defendant's motion to suppress, the officer testified that once defendant's vehicle had been stopped, he was not free to go, because he would have been in violation of two statutes if he had done so. He also stated that his first thoughts were that defendant was "possibly" under the influence of alcohol, but that he had made several hundred similar traffic stops per year and had previously not arrested some persons after their performance of field sobriety tests. The trial court found that it was not until the completion of the sobriety tests that the officer concluded that defendant was under the influence of intoxicants.

The trial court relied on *State v. Roberti,* 293 Or 59, 644 P2d 1104 (Lent, J., dissenting), *aff'd* 293 Or 236, 646 P2d 1341, *cert pending* (1982), and *State v. Taylor,* 59 Or App 396, 650 P2d 1090, *rev den* 290 Or 446 (1983), in concluding that

the officer's statement that when he stopped defendant he was not free to leave, defendant should have been given *Miranda* warnings. Because the warnings were not given, the evidence was suppressed. Given the facts of *Roberti* and the ultimate disposition of the case, the holding is that the defendant was in custody for *Miranda* purposes "when the officer had arrived at a decision, although uncommunicated to the motorist, to arrest him for driving while under the influence of intoxicants." 293 Or at 76. We so interpreted *Roberti* in *State v. Wells,* 58 Or App 617, 650 P2d 117 (1982), *rev den* 295 Or 446 (1983).

Although the facts in *State v. Taylor, supra,* are similar to those presently before us, there is a significant distinction. There, like here, the arresting officer testified that had defendant chosen to drive away from the scene of the stop, he would have stopped him again for eluding a police officer. In both cases, the officer was being candid: he had a right to stop the defendant on reasonable suspicion, detain him for a reasonable time and to make reasonable inquiry relating to the circumstances of the stop. In *Taylor,* despite that constructive acknowledgment by the officer that defendant was not free to leave, we did not hold that defendant was entitled to advice of his rights at the time of the stop. Rather, we held that the significant event was the officer's concluding that, after he made certain observations of the defendant's condition, the defendant was not free to leave for those reasons, not simply because he had been stopped. In doing so, we were attempting to apply the subjective test laid down in *Roberti.*

Here, on the other hand, the trial court found that defendant was not "apparently and clearly under the influence of intoxicants from the first contact" and that the officer did not "come to his subjective conclusion until after all of the field sobriety tests were made." Notwithstanding those findings, the court concluded that, in the light of *Roberti* and *Taylor,* it was required to hold that the officer's statement that defendant was not free to leave when he was stopped, without more, entitled defendant to be advised of his rights. Accordingly, all evidence from the time of the first question on the tape and defendant's performance on six sobriety tests were suppressed.

Neither *Roberti* nor *Taylor* require that result. To so hold would require *Miranda* warnings immediately after every stop premised on reasonable suspicion. If the officer has the right to stop, then the suspect is not free to leave without giving the officer a reasonable opportunity to make reasonable inquiry. ORS 131.615.[1] If the officer does not have a reasonable suspicion that the suspect has committed a crime, he has no authority to stop the suspect and the question becomes academic.

Justice Linde, concurring with the ultimate majority opinion in *Roberti,* would require an officer to advise a stopped motorist of his right to remain silent as soon as the stop expands into an investigation of a criminal offense, such as DUII. If that were the rule, the interrogation of defendant here would be subject to suppression, although evidence of defendant's performance on the sobriety tests would not, because that evidence is non-testimonial. *State v. Medenbach,* 48 Or App 133, 616 P2d 543 (1980); *State v. Bhattacharya,* 18 Or App 327, 525 P2d 203, *rev den* (1974). As we understand the *Roberti* holding, however, that is not the rule; to adopt it would appear to require invalidating at least the language of ORS 131.615(3), which provides that the inquiry is reasonable "if limited to the immediate circumstances that aroused the officer's suspicion."

Here, consistent with the trial court's findings, we hold that evidence of defendant's performance on the sobriety tests should not be suppressed and that the only part of the tape recording that need be suppressed is the part recorded after the sobriety tests were completed. Of course, the officer's

---

[1] ORS 131.615 provides:

"(1)  A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2)  The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3)  The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

ORS 131.605(5) provides:

"A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

testimony concerning defendant's statements made after that time must also be suppressed.

Reversed and remanded for trial.

**WARREN, J.,** specially concurring.

I agree with the result reached by the majority but would hold that the critical point in determining whether *Miranda* warnings are required must be the earlier of the officer's decision to arrest, as in *Roberti,* or the point in time when the objective information the officer has furnishes probable cause to arrest.

Relying on *State v. Roberti,* 293 Or 236, 646 P2d 1341 *cert pending* (1982), the majority concludes that a defendant is not in custody for *Miranda* purposes until "the officer had arrived at the decision, although uncommunicated to the motorist, to arrest him for driving while under the influence of intoxicants." 67 Or App at 604. The majority then relies on the trial court's finding of fact that the officer made the decision to arrest at the completion of the sobriety tests to suppress the evidence given without *Miranda* warnings after that time. The trial court's finding is entirely unsupported in the record. The only evidence as to when the subjective decision to arrest was made was the officer's testimony that he decided to arrest defendant on the basis of his driving, objective symptoms, test performances and statements made after the tests were completed. That evidence cannot support a conclusion that his decision was made earlier. I sense that the trial court was saying that, after the sobriety tests were completed, the objective facts the officer knew amounted to probable cause as a matter of law. But for the trial court's erroneous reliance on a "free to leave" analysis, it would have held that *Miranda* warnings were required to be given at the point when the evidence before the officer supported an arrest. That is consistent with *Roberti.*

Justice Lent's opinion begins:

"The problem in this case is to determine when a uniformed police officer's questioning of a motorist halted for improper driving became custodial interrogation. I would hold that it was from *at least as early as* the time when the officer had arrived at a decision, although uncommunicated to the

motorist, to arrest him for driving while under the influence of intoxicants." 293 Or at 76. (Emphasis supplied.)

*Roberti* does not hold that warnings under *Miranda* need not be given until the officer has decided to arrest the defendant; it holds that they must be given no later than that time.

The approach taken by the majority forces a trial judge to make factual findings as to when an officer makes a decision, even though uncommunicated, in order to determine whether the warnings were timely given. That strains the judicial factfinding role. I would hold that an officer cannot be free to ignore the objective facts. It is my view that defendant was entitled to *Miranda* warnings when the officer had probable cause to arrest, even though, subjectively, the decision to do so was not made until later.